[Civ. No. 9629. Second Appellate District, Division Two.—August 27, 1934.]

HARTFORD ACCIDENT & INDEMNITY COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, GERALD F. HOULIHAN et al., Respondents.

[Civ. No. 9630. Second Appellate District, Division Two.—August 27, 1934.]

PACIFIC EMPLOYERS INSURANCE COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCI- DENT COMMISSION, GERALD F. HOULIHAN, et al., Respondents.

F. Britton McConnell for Petitioners.

Everett A. Corten for Respondents.

SCOTT, J., *pro tem.—Certiorari* to review decision of the Industrial Accident Commission awarding compensation to respondent Houlihan. The applicant was employed as shipping clerk in a packing plant operated in turn by National Packing Company, Leonard Chudacoff, as receiver, and Tovrea Packing Company, who were insured at first by Pacific Employers Insurance Company and later by Hartford Accident & Indemnity Company. Industrial Accident Commission on November 20, 1933, made its findings, and awarded applicant compensation for temporary total disability due to tuberculosis, which compensation was to continue indefinitely. The compensation and medical expense were apportioned between the insurance carriers, 21/23 to Pacific company and 2/23 to Hartford company, on the basis of the time they had carried the insurance for the employers.

The evidence is clearly insufficient to justify or support an award of compensation to such employee under the Workmen's Compensation Act. The testimony showed that employee Houlihan began working for the company in October of 1929 and continued until July, 1933, his title being that of shipping clerk, and included work in the office, cooler, smoke room and outside, which exposed him to extremes of heat and cold, smoke, ammonia gas and inclement weather. When he started such work he was healthy. Two years afterward he was examined for insurance and there

is no evidence that tuberculosis was discovered. After some further time he started to lose weight, appetite and endurance, and later had "pleurisy trouble" and "colds". He first knew he had tuberculosis on June 20, 1933, and was obliged to stop work early in July. There is no question that the employee was suffering from pulmonary tuberculosis which rendered him temporarily totally disabled. The evidence does not show that it was due to his employment.

The report of the assistant medical director for the commission was as follows: "According to the record, this applicant was subjected to more than the usual hazard experienced by one in his type of employment. It is possible that continual exposures described would have predisposed to the lighting up of an inactive pulmonary tuberculosis. Naturally, such an opinion is merely surmise and conjecture. However, one can state positively that the duties of his employment as described would not be beneficial to him if he were susceptible to a tuberculosis lesion."

Petitioners' physician examined Houlihan and reported in part as follows, as to the cause of the tuberculosis: Dr. Campbell: "The question as to the cause in this particular case is blamed on the hazard of his occupation where he spends an average of 8 or 9 hours daily but the balance of the time is free to do whatever he cares to. Why penalize the place where he was employed 8 or 9 hours a day and attach no importance to his home life, environment and habits during the balance of the day? A general answer to the question is that any condition that lowers the tone of the general system renders the tissues susceptible to the changes produced by the tubercle bacillus. The latter is of course the direct cause, a susceptibility to its influence may be acquired by heredity, syphilis, alcoholism, occupations such as the inhalation of foul air and irritating particles, residence in damp or over crowded apartments, catarrhal inflammation of the respiratory tract or debility from any infectious disease, etc." Dr. Smith: "That this man is tuberculous is proved and he is now undergoing the proper treatment for his condition. That this condition is related to his employment in industry is extremely questionable, in my opinion. Tuberculosis is an infectious disease. This claimant does not set forth in any way any claim or any evidence to substantiate any claim that he was infected with

tubercle bacilli while in his employment, and I know of nothing in such employment that would cause such infection. Just where he picked up the infection of tubercle bacilli is undoubtedly unknown to him and likewise to me; therefore I am of the opinion that his infection causing tuberculosis cannot be traced to his employment in industry. Whether or not his occupation contributed to his present condition in so far as it may be claimed that employment in a 'cooler' may have brought about activity of a smoldering tuberculous infection, must be considered. I know of no evidence to support such claim, and know of no reason why the mere presence of an individual in a room of this character should be more prone to develop tuberculosis. He makes no claim of any injury to his body but apparently is entirely dependent on the fact that he was working in a 'cooler' in a packing house. At best a patient doing such work spends much less time at his occupation than he does outside his occupation, which hours are spent in rest and amusements which could just as readily be a factor in the development of tuberculosis as his work. I am therefore of the opinion that there is no relationship between the occupation in industry of this claimant and the tuberculosis from which he now suffers.''

A former employee, Baersch, who had done work similar to Houlihan, testified that he (Baersch) had lost weight while so employed, but did not state to what extent. Another witness called by respondent, an employee Trego, who had done the same kind of work as Houlihan ''off and on about eight years'', testified that his health had always been all right; that he had contracted colds in the different temperatures but had never been in the hospital for sickness. The commission found that Houlihan ''sustained injury arising out of and occurring in the course of said employment, consisting of an aggravation into a disabling condition of a preexisting nondisabling tuberculosis''. ▮ An injury, in order to be compensable under the terms of the Compensation Act, must have been sustained by the employee ''arising out of and in the course of the employment'', and must have been ''proximately caused by the employment''. (*Storm* v. *Industrial Acc. Com.*, 191 Cal. 4 [214 Pac. 874].) It is not suggested in this case that any accident had occurred which had caused or contributed to

applicant's condition. "While the word 'accident' has been eliminated from section 6 of the Workmen's Compensation Act, the phrase 'arising out of and in the course of the employment' has been interpreted to mean that the injury must result by reason of the employment in which the employee is engaged, and not by reason of some inherent natural defect which simply culminates during the time of employment. . . . There is no presumption as contended by respondents that because an injury occurs in the course of the employment it arises out of or because of that employment." (*Newton* v. *Industrial Acc. Com.*, 204 Cal. 185 [267 Pac. 542, 60 A. L. R. 1279].) "The burden is upon the applicant for compensation to show that the injury arose out of as well as in the course of the employment." (*Eastman* v. *Industrial Acc. Com.*, 186 Cal. 587, 593 [200 Pac. 17, 19].)

 In this case we have an employee suffering from pulmonary tuberculosis, a disease which for years has been studied, diagnosed and treated by those members of the medical profession whose research and experience have qualified them for that service and to whose judgment as experts on the subject of the disease their fellow practitioners defer. "The rule," as stated in *Simpson* v. *Industrial Acc. Com.*, 74 Cal. App. 239, 243 [240 Pac. 58], "appears to be that whenever the subject under consideration is one within the knowledge of experts only, and is not within the common knowledge of laymen, the expert evidence is conclusive upon the question in issue. It follows that in such cases neither the court nor the jury can disregard such evidence of experts, but on the other hand they are bound by such evidence even if it is contradicted by nonexpert witnesses. The same rule would of course apply to a proceeding before the industrial accident commission." Testimony of probative value sufficient to support applicant's claim is entirely lacking. No expert witness has expressed an opinion that it is even reasonably probable that the condition of applicant was due to his employment, and an award may not be predicated upon a possibility which is "merely surmise and conjecture". It is not sufficient that the referee or commission be satisfied as laymen of the correctness of their view, but the law requires that they shall reach their conclusion on the basis of legally competent evidence. A mere

surmise or conjecture does not constitute "a foundation sufficient to support a finding of fact". (*Simpson* v. *Industrial Acc. Com., supra.*)

The award is annulled.

Craig, Acting P. J., and Desmond, J., concurred.