[L. A. No. 26570. In Bank. Mar. 15, 1962.]

EARL A. WALTERS, Petitioner, v. THE INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Hays, McLaughlin & Evans, William T. Hays and John F. McLaughlin for Petitioner.

Everett A. Corten, Edward A. Sarkisian, Clopton & Penny and Mort L. Clopton for Respondents.

WHITE, J.—This is a petition by Earl A. Walters for a writ to review the "take nothing" award of respondent Industrial Accident Commission based upon its findings to the effect that a heart attack suffered by petitioner was not an industrially compensable injury, and its subsequent order denying a petition for reconsideration. In addition to the commission the respondents are petitioner's employers and their insurance carrier.

On June 9, 1958, petitioner suffered a sudden coronary occlusion while on the premises of his employer, the Warren-Anderson Company, an automobile repair establishment in Riverside. He was then 46 years of age, and had been employed as an automobile mechanic for Warren-Anderson for 27 years. He was immediately hospitalized and is now no longer able to work as a mechanic, although he is able to do light, part-time work in a service station.

At the initial hearing in April 1959 petitioner testified that an automobile which was very low at the front end was assigned to him for repairs on the morning in question, and that in order to make the repairs it was necessary to place the car on his lift rack. He stated: "The lift rack that I had over there was a little too high, so I backed up this way [with his back to the right front fender], got down to put my hands under it on the right hand side, and came up on it with all I had. When I did it seemed like something bursted and someone throwing a vise" within his chest. He testified that the car seemed as if it were "bolted to the floor," and surmised that the front springs had been heated and thus lost their springing action. He stated that he had been assisted by a coworker, Bernard Walker, who had lifted with his back to the left front fender, and by William Jones, the shop foreman, who was attempting to drive the car onto petitioner's lift rack as the two men lifted the front end. Petitioner testified further that the attempt to place the car on the rack was immediately abandoned; that the other two men then walked away, apparently not having noticed the petitioner's condition; that he then walked out of the building for a few moments, but "it didn't do any good"; that he walked back inside in the direction of Walker's adjoining lift rack, and that after a few words with Walker, he then became un-

conscious. He remembered the automobile as a dark colored, 1953 Ford sedan.

The shop foreman, William Jones, did not "recall being in the automobile," as testified to by petitioner. He did recall that he had written a job order for a brake adjustment on a 1953 Ford; that he saw the petitioner when the dispatcher called him to perform the work on the car, and that in the past it had been necessary to lift and drive cars onto the petitioner's lift rack. He remembered seeing the petitioner on the floor after he had become unconscious.

Bernard Walker stated that according to his best recollection he had attempted to lift the automobile while pulling upward on the left front bumper, facing the car and "a little sideways." He testified: "The next thing I remember, Earl [petitioner] was out in the alley. I was called to the speaker by the dispatcher . . . and I figured on coming back." He also stated that while most low cars are comparatively easy to lift and slide onto the rack, "This car for some reason was a lot heavier. . . . It was low. I don't know whether it had a heavier engine in it or what, but it was a damn low heavy car." According to Walker, the car was a 1953 Ford sedan, dark in color.

Concerning the details of petitioner's collapse, Walker testified: "Earl Walters came over to my place of work and squatted down against the wall and clutched his chest and said, 'I don't think I'm going to make it.' . . . Then he tried to stand up, and at that time he started to fall, and I caught him." Walker subsequently drove the automobile upon his newer and lower rack, and repaired it.

After a proper foundation had been laid, Walker was confronted with two signed statements which he had made in December 1958, at the instance of an insurance investigator. In the first statement, Walker recited the details of petitioner's collapse in his arms, but stated that no lifting incident had occurred that morning. After signing the first statement he was then shown a shop order for the automobile allegedly involved in the claimed lifting incident. Thereafter, in the second and supplemental statement, he stated that he had no "recollection whether or not I helped him to lift the car up on the rack." In explanation of the seemingly prior inconsistent statements Walker explained that his inability to recall the lifting at the time he made the statements to the insurance investigator was due to the fact that such lifts

were routine operations, but by referring to a work order he often could "remember the facts" of a particular job. The car was described on the work order as a 1953 Ford convertible.

The physician who treated petitioner, Dr. Ben B. Thompson, testified that a few days after the attack petitioner had stated to him that he had experienced a sudden pain in his chest while lifting something heavy at work. But Dr. Thompson admitted that on a claim form addressed to a nonindustrial insurance carrier, he had answered "No" to the question, "Did this sickness or injury arise out of patient's employment?" Dr. Thompson's explanation was that petitioner had not come to him as an industrial case, and that under these circumstances a "Yes" answer would have caused complications to processing the matter as a private insurance case. Concerning a possible relationship between the alleged lifting and the occurrence of applicant's attack, it was the doctor's opinion that "if the man was straining lifting and had a sudden attack . . . I would definitely say lifting caused the attack." It was also the opinion of petitioner's cardiologist, Dr. Martin S. Goldfarb, based on petitioner's account of the incident to him, that the former's attack "was directly precipitated by the effort of trying to lift a car onto a rack on June 9th, 1958." The record discloses that petitioner has given every examining physician a similar version of the occurrence of the attack while lifting the automobile.

Dr. Goldfarb also testified that while there was some difference of opinion among cardiologists, it was the majority opinion in that profession "that effort is a precipitating factor in coronary occlusion." But Dr. R. J. LaJoie, another cardiologist who had examined petitioner testified on behalf of the employer that he "was of the opinion that there was no causal connection between the acute coronary occlusion . . . which he suffered on June 9th, 1958 [and] his occupation." The latter expert opinion was based on Dr. LaJoie's belief that applicant had suffered from atherosclerotic heart disease for a number of years. He further testified that even if the attack had occurred simultaneously with the alleged lifting, the stress involved by a lift in that bodily position was not of a nature to precipitate a coronary occlusion.

In his report to the commission following the hearing the referee relied in part upon the fact that the hospital record does not reflect the alleged lifting incident, although that

record does state over Dr. Thompson's signature that the injury was produced by a "sudden onset at work." The referee also stated that Dr. Thompson's "testimony concerning the history of lifting something is unconvincing," and that the "testimony of the corroborating witness [Walker] concerning the lifting incident is not persuasive and is contradicted by his original statement which indicates that he knew nothing about the lifting incident." He concluded: "It appears from the evidence that the alleged attempted lifting of the car onto the rack did not occur, but that the heart seizure was spontaneous and that injury did not arise out of the employment."

Petitioner filed a timely petition for reconsideration, which was denied on October 19, 1959. A commission panel stated in its report at that time: "While applicant's testimony may not have been squarely contradicted by any single witness or single piece of evidence, there is much in the record, direct evidence and inferences alike, to challenge the accuracy of applicant's story. The failure of applicant's doctor to report the injury as an industrial one until six months after it supposedly occurred, . . . and the failure of other witnesses to support applicant's testimony in significant ways might all be regarded as being of no materiality if the trial referee had been persuaded that applicant's testimony was so completely credible that it should be afforded all benefit of doubt. Applicant's testimony, however, in light of this other evidence, did not bring sufficient conviction to the trial referee's mind that it would constitute proof of the industrial injury as alleged."

A petition to reopen was filed by petitioner in January 1961, wherein he alleged newly discovered evidence. Hearing was had concerning whether petitioner had made a sufficient showing to warrant reopening his case. The evidence included testimony by two fellow employees, James Roberts and Ouverture Williams. Williams testified that at about 7:45 a. m. on the day in question he observed petitioner attempting to move a car onto his lift rack. He testified that the foreman, Jones, was in the car, and that petitioner was lifting while facing the automobile; that a few minutes later he saw petitioner collapse in Walker's arms. According to Williams, the automobile was a light colored 1952 or 1953 Ford. He stated that he saw no other person with applicant at the front of the car. Roberts testified that at 8:15 a. m. he had observed applicant and another man attempting to place a Ford car onto the brake rack, and that a few minutes later he saw applicant

lying on the floor. He stated that there had been someone else in the car. According to Roberts, applicant was lifting with his back to the right front fender.

Petitioner's newly discovered evidence also included testimony by Orville Baker, a truck driver who had stopped by the repair shop shortly after applicant's attack. Baker testified that he had asked the shop foreman, Jones, what happened, and Jones volunteered "to tell me that Earl [petitioner] was lifting something on the rack and had a spell or pain in his chest." Jones was recalled, and he testified that he did not recall having had the latter conversation with Baker. He explained, "Because the only information that I had was that Mr. Walters had a heart attack." This admission constituted a slight departure from the prior testimony of Jones, wherein he had testified only that "Earl had passed out."

The referee determined that petitioner exercised due diligence in producing the new evidence, and there is no question herein whether the evidence was timely produced. The petition to reopen was denied on May 10, 1961, and a petition for reconsideration thereof was denied on June 21, 1961.

█ It is noted that petitioner purports to seek review of the original award as well as the orders denying the petition to reopen and denying reconsideration thereof. However, at the time of the filing of the petition to reopen, the statutory time for review of the original proceedings had long since expired. (Lab. Code, § 5950.) Accordingly, the record of the original proceedings is not now before us for review as to the correctness thereof. That record may, however, be reviewed together with other matters in the present proceeding to determine whether there is good cause to reopen and our decision herein will be so limited. (*Clendaniel* v. *Industrial Acc. Com.*, 17 Cal.2d 659, 662 [111 P.2d 314].)

█ The evidence introduced at the original hearing furnishes, at the most, only the bare minimum of support for the commission's order. (See *Market St. Ry. Co.* v. *Industrial Acc. Com.*, 193 Cal. 178 [224 P. 95]; *Hubbert* v. *Industrial Acc. Com.*, 14 Cal.App.2d 171, 172-173 [58 P.2d 171].) Reviewing briefly the testimony which reasonably supports petitioner's version of the lifting incident there is, in addition to the petitioner's testimony, the testimony of Bernard Walker and Dr. Thompson. The testimony of these witnesses, and that of the additionally offered witnesses also, differs in some

of the details of the lifting incident, but it is manifest that such inconsistencies would normally occur in the various accounts of eye witnesses. Opposed to the petitioner's version is the testimony of the foreman, William Jones, who could *not remember* that he had been in the automobile as the petitioner testified, the lack of a hospital record of the lifting incident, and evidence offered in impeachment of the testimony of Bernard Walker and Dr. Thompson. Some of this evidence, particularly the hospital record and the impeaching testimony, could not be considered as affirmative evidence that the lifting incident had not occurred. (See *Oldenburg* v. *Sears, Roebuck & Co.,* 152 Cal.App.2d 733, 742 [314 P.2d 33].) There were, in addition to the foregoing, the conflicting medical opinions of the cardiologists, but their testimony did not go to the fact of the lift, and it appears that the parties properly concede that the propriety of reopening should be determined independently of the conflict in medical views. The only direct evidence in support of the award, then, bearing on whether the lift had occurred was that of the foreman and he concedes that petitioner was there at work that morning, that he was assigned the job in question, that it was often necessary to lift cars onto petitioner's rack, and that thereafter petitioner had an attack. His testimony conflicts only in whether the lift occurred and as to this he could not say that it had not, but only that *he could not recall* that he assisted in attempting to move the car onto the rack.

Petitioner contends that in issuing its order denying the reopening of his case, respondent commission has disregarded the uncontradicted sworn statements of petitioner and his witnesses, James Roberts and Ouverture Williams, whose testimony was not inherently improbable. But petitioner attempts to invoke a rule applicable to judicial review of original proceedings had before respondent commission (see *Hartford A. & I. Co.* v. *Industrial Acc. Com.,* 140 Cal.App. 482 [35 P.2d 366]; *Singer* v. *Industrial Acc. Com.,* 105 Cal. App. 374 [287 P. 567]), whereas the instant proceeding relates instead to the propriety of the commission's refusal to reopen a case. The rule therein is that ''good cause'' must be shown for reopening. (Lab. Code, § 5803.) ▆▆ Where a petition to reopen is based upon newly discovered evidence, good cause to reopen is not established by evidence that is ''merely cumulative'' of the original evidence. (*Clendaniel* v. *Industrial Acc. Com., supra,* 17 Cal.2d 659, 662.) Thus, in compliance with the rule that cumulative evidence alone does

not establish good cause for reopening, the commission may have been free to disregard the testimony of James Roberts and Ouverture Williams, as cumulative to the testimony of petitioner and Bernard Walker at the hearing of the application to reopen. However, the newly discovered matter also included testimony by Orville Baker, a disinterested witness, which tended to impeach the foreman Jones' inability to recall the alleged lifting incident. While such a prior inconsistent statement is normally admissible for the limited purpose of impeachment only, it nevertheless introduces a new and different facet not previously before the trier of fact, which would properly bear on the ultimate determination of whether petitioner made the lift as claimed. Furthermore it is apparent from the referee's report that he did not recognize the impeaching effect of Baker's testimony, as he dismissed it as the ''rankest hearsay.'' While such testimony was only impeaching in character, nevertheless its effect cannot be minimized in the instant circumstances, as it struck at the *only* direct evidence in support of the finding that the lift had not occurred. Such evidence is more than ''merely cumulative.'' If believed by the trier of fact, the original award could not be supported.

 In addition to evidence which is more than ''merely cumulative'' good cause for reopening requires that there exists ''some good ground which rendered the original award inequitable.'' (*Clendaniel* v. *Industrial Acc. Com., supra,* 17 Cal.2d 659, 663.) In the instant case the referee in his report of the hearing criticizes the petitioner for his lack of evidence which the referee could believe as the latter's reason for a recommendation unfavorable to applicant. Now the petitioner has offered new testimony of the lifting incident which, insofar as the record shows, is not subject to the foregoing criticism. In addition to bolstering the petitioner's testimony, the offer of testimony by Orville Baker also casts doubt on the only affirmative evidence in support of the award. Were such testimony to be established in substantial part on a reopening, the inequity of the original award seems manifest. To hold otherwise would be to disregard the stated ''policy of the law, enjoined by both statute and precedent, . . . that workmen's compensation laws shall be liberally construed in favor of extending their benefits. (Lab. Code, § 3202; *Aetna Life Ins. Co.* v. *Industrial Acc. Com.* (1952) 38 Cal.2d 599, 604 [241 P.2d 530].)'' (*Subsequent etc. Fund* v. *Industrial Acc. Com.,* 39 Cal.2d 83, 91 [244 P.2d 889].)

Applying the pertinent statutes and decisional law to the evidentiary features of the cause now engaging our attention, we are persuaded that the petitioner has demonstrated the inequity of the original ''take nothing'' award, that he has established good cause for reopening his case, and that the order of respondent commission denying the petition therefor was erroneous.

For the foregoing reasons the orders denying the petitions for reopening and reconsideration thereof are, and each is annulled, and the cause is remanded to respondent commission for further proceedings not inconsistent with the views herein expressed.

Gibson, C. J., Traynor, J., Peters, J., and Dooling, J., concurred.

McCOMB, J.—I dissent. It is my view that the findings and rulings of respondent Industrial Accident Commission were made after careful consideration of the entire record, in which there was conflicting evidence and a question as to the credibility of witnesses, that they were based on substantial evidence, and, therefore, the record supports the conclusions of the commission.

Schauer, J., concurred.

Respondents' petitions for a rehearing were denied April 17, 1962. Traynor, J., Schauer, J., and McComb, J., were of the opinion that the petition should be granted.