[Civ. No. 12923. First Dist., Div. One. Sept. 5, 1945.]

SIMMONS COMPANY, Petitioner, v. INDUSTRIAL ACCI-
DENT COMMISSION and DORIS TRINGALE, Re-
spondents.

Keith & Creede for Petitioner.

Everett A. Corten, Joseph Sheehan and R. C. McKellips for Respondents.

WARD, J.—This cause is presented as a petition to review the findings and an award of the Industrial Accident Commission based upon the alleged "serious and wilful misconduct of the employer" wherein it was held that the injury to the applicant for industrial compensation resulted from the failure "to have in place a guard upon the machine upon which applicant was hurt at or near the point where she was required to handle its operation." In addition to normal compensation an award of 50 per cent was imposed on the employer.

On or about July 14, 1944, Doris Tringale filed an application for adjustment of a claim, alleging that on March 7, 1944, arising out of and in the course of her employment an injury had occurred to the index and middle fingers of her right hand which resulted in their amputation. The application contained a general allegation of "wilful misconduct." An amended application dated August 21, 1944, was filed just prior to the hearing by the referee alleging "serious and wilful misconduct of employer in directing applicant a wholly inexperienced person to work on a guardless punch machine." On January 10, 1945, the referee to whom the application had been assigned filed a report containing the following: "The controversy is whether the accident was caused by the serious and wilful misconduct of the employer. Almost immediately after it occurred, at least within 48 hours, an effective guard was installed at small cost. If it had been in place at the time, the accident would not have happened.

"No photographs are in the file. It is difficult to obtain a clear view unless one sees the machine in operation, which I did.

"As briefly as possible: Applicant was putting necks on canisters used in gas masks. The canister is a tin can open at one end with a small hole opening at the other where the neck goes on. The open end of the canister is put over a cylinder, which is upon a rod, all part of the machine. The rod is pulled out and then pushed back, when the canister is in place, under the press. The peddle is then tripped and the press, or plunger, with the neck comes down upon the canister and the neck is attached. The left hand is used to push the rod back and forth, the right to put the canister in place on the cylinder. This is the work applicant did. She claims she was adjusting the canister as it went back in place under the

press. She must have had her fingers on top of the can as it went under the plunger, because they were cut off.

"As long as the fingers are kept off the top of the can, there is no danger. Now that there is a guard, the fingers can't get in under the plunger. A guard could have been in place at the time of the injury.

"The defendant says a guard was not required by 'Mechanical Power Transmission Safety Orders' of the Industrial Accident Commission, particularly Order 2601, the first paragraph of which reads: 'These orders shall also apply to all connecting rods . . . revolving or reciprocating parts up to but not including the "point of operation."' It is argued that by reason of this provision, the defendant is exempt from placing any guard at the point where the plunger contacted the horn of the cylinder. Just what is meant by the 'point of operation' is debatable. The witness Horswell, a Safety Engineer of the Commission, testified that in his opinion the 'point of operation' is the point where the operator stands and feeds objects into the machine. In accordance with this view no guard is necessary at the point where the injury is most likely to occur.

"To construe the point of operation as the point where the operator stands in front of the machine and feeds materials into it so as to make it unnecessary to guard moving parts in front of him would be to render Order #2601 inoperative. Rather I would be inclined to think the proper interpretation of the section would be to find a guard unnecessary only where materials could not be put into the machine, if at the point of operation, a guard was in place.

"Here it was entirely possible to put on a guard at small cost, which, when in place, would offer adequate protection and while in place would not interfere or hinder the work. Should the employer have realized this before the accident happened?

"To work on this machine undeniably had a tendency to draw applicant's fingers in and about the plunger where there was an open and obvious danger of serious injury. It was the kind of a danger, which, if the employer had turned his attention to it, he should have anticipated and corrected.

"If he did rely on the Safety Orders of the commission, he placed an erroneous interpretation upon them. The machine

could have been guarded at small cost and the accident avoided.

"The employer should pay the applicant fifty per cent additional compensation and I so recommend."

Considerable space is devoted by each side to the question whether there was a sufficient showing that *if* there was serious and wilful misconduct, it was the result of an act or the failure to act on the part of an "executive, managing officer or general superintendent." In the present case there is sufficient evidence from which to draw a reasonable inference that the foreman had been invested with general discretionary powers as managing officer and superintendent, with particular supervisory authority in the care and operation of the machine and the direction of forty employees in that "department" of the Simmons plant. Manifestly he was not "an employee occupying a relatively inferior and subservient position." (*Bechtel etc. Corp.* v. *Industrial Acc. Com.*, 25 Cal. 2d 171, 177 [153 P.2d 331]; *Gordon* v. *Industrial Acc. Com.*, 199 Cal. 420 [249 P. 849]; *Bethlehem Steel Co.* v. *Industrial Acc. Com.*, 23 Cal.2d 659 [145 P.2d 583]; *California Shipbuilding Corp.* v. *Industrial Acc. Com.*, 64 Cal.App.2d 622 [149 P.2d 432].)

No recommendation or allusion is made in the report of the referee with reference to the allegations in the amended application relative to the employer's directing a wholly inexperienced applicant to work on a guardless punch machine.

Subsequent to the report of the referee, the commission on January 26, 1945, filed its findings and award and made a separate finding as follows: "Aforesaid injury was caused by the serious and wilful misconduct of the employer in that said employer failed to have in place a guard upon the machine upon which applicant was hurt at or near the point where she was required to handle its operation." The finding is limited to the failure of the employer "to have in place a guard upon the machine," but there is no finding that the employer knowingly and wilfully violated any provision required by " 'Mechanical Power Transmission Safety Orders' of the Industrial Accident Commission, particularly Order 2601."

One of the safety inspectors for the commission testified that prior to the accident he had inspected the machine in question and did not then or at any other time recommend that a guard should be placed "on that machine." Another safety engineer for the commission testified: "We have never

required guards on machines like that, and I have inspected hundreds of similar machines.'' The evidence shows that several months prior to the accident a security inspector representing a branch of the Security Command of the United States Government interested in the manufacture of ''gas masks,'' visited the Simmons plant and made certain recommendations for the ''safety'' of workers engaged in the manufacture of articles for the federal government, none of which required a guard on the machine in question. The only evidence upon which the finding of wilful misconduct may be based is the report of the referee who personally examined the machine after the accident.

In the absence of a specific order by the Industrial Accident Commission requiring a safety device, and in view of the opinions of safety engineers of the commission and of the United States Government that a safety device was not necessary, plus the report of the referee that the applicability of Order 2601 ''is debatable,'' was the commission justified, merely upon the referee's observation of the operation of the machine after the accident, in finding that there was substantial evidence that the employer was guilty of wilful misconduct in failing to place a guard on the machine? The applicant for compensation is not quite clear in her description of how the accident occurred. She had been operating the machine for over an hour. Contrary to the report of the referee, there is evidence that with the guard now on the machine it is still possible for a similar accident to occur, but it would ''not be as easy as it was before.''

Ordinarily engineers qualified by training and experience are proper witnesses within the purview of their training. Such testimony includes evidence as to instruments propelled by power or mechanical force. (10 Cal.Jur. 1011.) Whether a machine is of complicated construction, or its operation so simple that one educated in the law but untrained in the science of mechanical devices is able to say that a safety guard is necessary, are questions vital in the determination of this case. The members of the commission who did not examine the machine must have determined that the referee's views, as expressed in the report, were superior to the opinions of the commission's expert engineers.

The observations made by a referee in viewing the premises, or, as in this case, a mechanical device, may be con-

670

sidered by the commission as evidence. (*Ethel D. Co.* v. *Industrial Acc. Com.*, 219 Cal. 699 [28 P.2d 919].) The commission is not bound by legally recognized rules of evidence but at least the evidence must have some degree of probative force. There is no evidence that the referee was an expert or knew anything about the construction or operation of this or any other mechanical device.

 This is not a case where the trier of the facts may use his independent judgment against the opinion of one presumably skilled in subjects not within the knowledge of the ordinary person, and may determine a disputed question from observation. The facts here show, without contradiction, that the experts of the commission did not think, prior to the accident, that a guard was necessary. The referee's opinion was formed as a sequence of the accident. The evidence shows that, with the guard, a similar accident would not be as likely to occur, but there is no evidence to show that, prior to the accident, anyone knew, or should have known, that such an accident would occur to an ordinarily prudent person. The referee's report on this question is merely a surmise and conjecture which the law does not recognize as the basis of a finding. It is not substantial evidence. (*Thoreau* v. *Industrial Acc. Com.*, 120 Cal.App. 67 [7 P.2d 767] ; *Southern Pac. Co.* v. *Railroad Com.*, 13 Cal.2d 125 [87 P.2d 1052] ; *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 47 Cal.App.2d 494 [118 P.2d 334] ; *Winthrop* v. *Industrial Acc. Com.*, 213 Cal. 351 [2 P.2d 142].) It is merely a fanciful conclusion that does not raise the possibility of a conflict in the evidence. (*Brant* v. *Retirement Board of S. F.*, 57 Cal.App.2d 721 [135 P.2d 396].) A recent expression of the view of the Supreme Court of this state appears in *Pacific Freight Lines* v. *Industrial Acc. Com.*, 26 Cal.2d 234, 240 [157 P.2d 634] : "The law under which the commission functions is founded upon sound public policy and with the general objective of compensating the injured employee or his dependents for injuries or death resulting from the ordinary hazards of the employment. But where, as here, the uncontradicted and unimpeached evidence points unerringly to the conclusion that the death was caused solely by the intoxication of the employee, and there is no substantial evidence in conflict therewith, a finding to the contrary and an award based on such finding are not within the jurisdiction of the commission. (*Eagles Home Assn.* v. *Industrial*

*Acc. Com.,* 140 Cal.App. 646, 648 [35 P.2d 591].). . . . Here no 'rational view of the evidence' (*North Pacific Steamship Co.* v. *Industrial Acc. Com.,* 174 Cal. 500, 502 [163 P. 910]) supports the challenged finding of the commission.'' In this respect, when the employee makes a claim of wilful misconduct, which is a quasi criminal charge, it is incumbent upon the commission to protect the substantial rights of all parties. It should not be amiss to repeat the accepted views on the subject of wilful misconduct.

The views of the Supreme Court as set forth in the last three years are interesting. In *Parkhurst* v. *Industrial Acc. Com.,* 20 Cal.2d 826, 829-831 [129 P.2d 113], it was said: ''Serious and willful misconduct is conduct that the employer knew, or should have known, was likely to cause serious injury, or conduct that evinces a reckless disregard for the safety of others. [Citing cases.]'' ''It is true that not every violation of a statute is serious and willful misconduct. [Citing cases.]'' ''It is well settled that the question whether serious and willful misconduct of the employer caused the employee's injury is essentially one of fact, and that if there is any substantial evidence to support the findings of the commission its award will not be disturbed. Its award will be set aside, however, if there is no evidence to support its findings. (*Hatheway* v. *Industrial Acc. Com., supra,* [13 Cal.2d 377 (90 P.2d 68)]; *Ethel D. Co.* v. *Industrial Acc. Com., supra,* [219 Cal. 699 (28 P.2d 919)].)'' ''The test under these cases is whether the employer knowingly or willfully committed an act that he knew or should have known was likely to cause harm to his employee.'' '' ' . . . Where there is a deliberate breach of a law . . . , which is framed in the interests of the working man, it will be held that such a breach . . . amounts to serious misconduct.' So spoke the court in *Fidelity etc. Co.* v. *Industrial Acc. Com.,* 171 Cal. 728 [154 P. 834, L.R.A. 1916D, 903], annulling an award based on a finding that an employee whose injury resulted from a violation of speed laws was not guilty of serious and willful misconduct. The rule must be similarly applied to the conduct of an employer.'' The same rule is recognized in *Bethlehem Steel Co.* v. *Industrial Acc. Com., supra.* In the present case there is no ''deliberate breach of a law.''

In *Ethel D. Co.* v. *Industrial Acc. Com., supra,* inspectors employed by the commission had visited the premises involved

and made recommendation of "various unspecified changes," but did not make any recommendation with respect to a "ladder" from which the applicant in that case had fallen and suffered injuries. It was stated that the evidence "with respect to the visits of inspectors is too vague to support so bold an argument" as that the commission had approved the use of the ladder without "handholds" which a specific safety order of the commission required. The court held (p. 708): "The Industrial Accident Commission, in its administrative capacity, possesses no authority to waive or consent to the violation of a duty owing primarily and directly to the employee from the employer." In the present case there is no claim that the commission waived a duty to an employee by the failure of the inspectors to examine the machine, thereby approving its construction. On the contrary, this particular machine was examined, approved at that time and specifically approved by safety inspectors as appears from testimony under oath before the referee. Ten years later upon facts somewhat similar to those in the Ethel D. Co. case and the present case, in *Central Cal. Ice Co.* v. *Industrial Acc. Com.*, 66 Cal. App.2d 339, 346, 347 [152 P.2d 33] (*petition for hearing by the Supreme Court denied*), it is said: "It is not enough to prove negligence or even gross negligence on the part of the employer in order to fasten the added liability on it. In addition there must be a wilful disregard of consequences with injury to the employee as a probable result." "This suggests that neither the commission nor its inspectors regarded the practice involved here as dangerous. Otherwise the commission should have performed the duty imposed upon it by law and should have prohibited the practices which are now, for the first time, urged as inherently dangerous. As the commission must be charged with notice of these practices and as it failed to regard them as sufficiently dangerous to require the issuance of a safety order regulating them, as neither it nor its employees had even criticized the practices, and as no similar accident had happened in the ice industry, those practices should not be held to furnish grounds for concluding that their employment by petitioner constituted serious and wilful misconduct until the Industrial Accident Commission issues a safety order prohibiting or regulating either or both of them which is in its power to do if either practice creates a serious hazard to an employee. (*Bethlehem Steel Co.* v. *Industrial*

*Acc. Com.*, 23 Cal.2d 659 [145 P.2d 583].)'' On the foregoing reasoning an award of extra compensation based upon a finding of serious and wilful misconduct in continuing the particular practices was annulled. In the present case, the commission's engineers did not think that the safety order covered the machine in question. The referee thought this question was debatable.

Extensive liberality has been exercised by appellate courts in construing and upholding findings made by the Industrial Accident Commission, but in view of the facts in this case and the holding in the Central Ice Company case it is impossible to approve the *present finding* of the commission that the failure to *place* a guard at the point where the applicant received the injury is *wilful misconduct*.

The second question presented concerns the duty of the commission in making an award to state its determination as to the rights of the parties and make findings upon all facts involved in the controversy. (Lab. Code, § 5800; *Western Metal Supply Co.* v. *Pillsbury*, 172 Cal. 407 [156 P. 491, Ann. Cas. 1917E 390].) ''Since the Industrial Accident Commission is a judicial body exercising judicial functions, its decisions and awards are subject to those general legal principles which circumscribe and regulate the judgments of all judicial tribunals.'' (*Gouanillou* v. *Industrial Acc. Com.*, 184 Cal. 418, 420-421 [193 P. 937].) Based upon the above rule it was stated in *Taylor* v. *Industrial Acc. Com.*, 38 Cal.App.2d 75, 80 [100 P.2d 511] : ''Therefore, the sufficiency of the questioned finding must be determined in the light of rules applicable to such procedure in our courts. Section 5313 of the Labor Code provides that the referee shall report his findings in writing to the commission within fifteen days after the testimony is closed, and provides further that 'the facts found and conclusions of law shall be separately stated.' Section 5315 of the Labor Code clothes the commission with power to confirm, adopt, modify or set aside the report of the referee or any part thereof, and to enter its order, findings, decision or award, based in whole or in part upon the report of the referee, or upon the record in the case.'' The finding in the Taylor case differed from the finding in this case in that here there was a specific finding of failure to place a guard upon the machine upon which applicant was hurt instead of merely a general finding of wilful misconduct.

674

In the present petition in addition to the difference in the form of the finding from that in the Taylor case, *supra*, an issue was presented to the commission upon which neither the referee nor the commission made a finding, though it was referred to by the "rehearing referee" in his recommendation to deny a motion for rehearing. Just before the hearing started an amended application for adjustment of claim was filed in which the charges of serious and wilful misconduct were based upon the act of directing "a wholly inexperienced person to work on a guardless punch machine." ■ A finding may be declared sufficient by reference to the record, including the evidence (*Ethel D. Co. v. Industrial Acc. Com., supra*), but in the present case there is no finding on the amended allegations of wilful misconduct based upon failure to instruct an inexperienced employee. ■ It is "essential that findings be such that the truth or falsity of each material allegation in issue can be demonstrated from the findings." (*Taylor* v. *Industrial Acc. Com., supra*, p. 81.) ■ In a rehearing before the commission there may appear substantial evidence from which a reasonable inference may be drawn that an inexperienced girl was directed to operate a mechanical instrument, and it is possible, depending upon circumstances, that the evidence may show such disregard of probable or possible consequences as to warrant a finding of serious and wilful misconduct on that issue. The rehearing referee reported on this subject. His theory may or may not be sound. On this writ of review it is impossible to pass on that question.

The award of additional benefits based upon the alleged serious and wilful misconduct of the petitioning employer's failure to "place a guard upon the machine" etc. is annulled. In view of the failure of the commission to find on the issue presented in the amended application for compensation, the cause is remanded to make such finding as may seem proper to the commission.

Peters, P. J., and Knight, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied November 1, 1945.