[Civ. No. 57926. Second Dist., Div. Three. Aug. 29, 1980.]

NICKY BLAIR'S RESTAURANT et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and
JUAN J. MACIAS, Respondents.

COUNSEL

Parker & Dally, Perry K. Countryman and Stanford D. Herlick for Petitioners.

Richard W. Younkin, William B. Donohoe, Dexter W. Young, Wax & Appell and Melvin C. Appell for Respondents.

OPINION

COBEY, Acting P. J.—Petitioners (the employer and its insurer) seek review of a decision of the respondent Workers' Compensation Appeals Board (Board) permitting respondent injured worker to re-open his workers' compensation award. Specifically, petitioners contend the Board erred in (1) increasing the permanent disability award and (2) awarding further medical treatment. There is no merit to the latter contention. The first contention, however, raises the serious question of the proper legal standards for reopening a prior

decision of the Board under Labor Code[1] sections 5410,[2] 5803,[3] 5804[4] and 5805.[5]

## PROCEEDINGS BEFORE BOARD

Respondent Juan J. Macias (hereinafter also "applicant") while employed on October 14, 1972, as a waiter by petitioner Nicky Blair's Restaurant, whose compensation insurance carrier is petitioner The Travelers Insurance Company, sustained injury arising out of and in the course of his employment to his back. A herniated disc at the L4-L5 level was diagnosed. In October 1973 Macias underwent a lumbar laminectomy.

After a hearing on April 24, 1975, Workers' Compensation Judge Lippert awarded Macias back disability of 21 1/2 percent ($4,816.50) based upon finding "back disability involving loss of approximately one-half of preinjury lifting capacity." Macias did not seek reconsideration of this award issued in August 1975.

---

[1]Hereinafter, unless specified to the contrary, all references will be to the Labor Code.

[2]Section 5410 provides: "Nothing in this chapter shall bar the right of any injured employee to institute proceedings for the collection of compensation *within five years after the date of the injury upon the ground that the original injury has caused new and further disability.* The jurisdiction of the appeals board in such cases shall be a continuing jurisdiction at all times within such period. This section does not extend the limitation provided in Section 5407." (Italics Added.)

[3]Section 5803 provides: "The appeals board has continuing jurisdiction over all its orders, decisions, and awards made and entered under the provisions of this division. At any time, upon notice and after an opportunity to be heard is given to the parties in interest, the appeals board may rescind, alter, or amend any such order, decision, or award, *good cause appearing therefor.*

"Such power includes the right to review, grant or regrant, diminish, increase or terminate, within the limits prescribed by this division, any compensation awarded, upon the grounds that the disability of the person in whose favor such award was made has either recurred, increased, diminished, or terminated." (Italics added.)

[4]Section 5804 provides: "No award of compensation shall be rescinded, altered, or amended after five years from the date of the injury except upon a petition by a party in interest filed within such five years and any counterpetition seeking other relief filed by the adverse party within 30 days of the original petition raising issues in addition to those raised by such original petition. Provided, however, that after an award has been made finding that there was employment and the time to petition for a rehearing or reconsideration or review has expired or such petition if made has been determined, the appeals board upon a petition to reopen shall not have the power to find that there was no employment."

[5]Section 5805 provides: "Any order, decision or award rescinding altering or amending a prior order, decision, or award shall have the effect herein provided for original orders, decisions and awards."

In March 1977 Macias filed a petition to reopen his claim alleging "new and further" disability. The petition to reopen was heard before Workers' Compensation Judge Stark.[6] Judge Stark granted the petition to reopen and increased Macias' permanent disability award to 52 percent ($15,746.25) based upon a back disability limiting Macias to "light work" and also awarded further medical treatment.

In the petition to reopen proceedings Macias testified that since the original 1975 award his condition has deteriorated. His pain is more intense. His problems with his left leg (cramps and burning sensation) have intensified. He has a tremendous burning sensation at the base of the neck and into both shoulders and has "strong" headaches at the top of his head. The neck and shoulder complaints and the headaches started in the spring or summer of 1976.[7]

---

[6]The policy of the Board is, to the "extent practicable," to assign supplemental proceedings, such as a petition to reopen, to the judge "who heard the original proceedings except where reconsideration has been granted contrary to the [judge's] recommendation." (WCAB Rules of Practice and Procedure (Cal. Admin. Code, tit. 8, ch. 4.5, subch. 2) § 10340). Judge Lippert, however, had retired before the petition to reopen was filed.

[7]As summarized by Judge Lippert, on April 24, 1975, Macias testified about his condition as follows: "He has difficulty in dressing, especially in putting his socks on. He drives a 1963 Corvair sometimes. After about one-half hour to one hour his right leg gets very stiff from the front of the knee to his toes which begin to tingle. This has reference to the first four toes.

"He has frequent cramps at night and a burning sensation in the sole of his feet. He relieves the cramps by massaging his legs with alcohol. It helps a little. He has cramps sometimes during the day. He had cramps last night. He has night cramps about three or four times a week.

"The left leg is also involved. If he sits or stands for a long time or changes body position, then he has a burning sensation in the soles of his feet. He has cramps on long standing, sitting for ten to 20 minutes. He also has a burning sensation in the soles of the feet if he stands for 40 to 60 minutes. If he walks four to five blocks, he has burning in the soles of his feet. If he doesn't feel good, he feels a numbness in his legs. This extends from just below the knee along the anterior aspect to the dorsum of the foot and also on the lateral aspect at the calf and also to the toes. This description pertains to both legs.

"He is bothered in his low back. He also has pain in his abdomen, which goes right through his body to the low back, each morning on arising. It is felt from the area in the region of the umbilicus.

"His low back hurts all of the time. It feels like something is pushing on the bone. If he lifts heavy things or engages in a sudden movement or uses his arm, it is worse. He can perhaps lift 20 pounds.

"He has pain on going to sleep. He takes Anacin every night to help him sleep. He also does the exercises prescribed. They help to a point.

"In the last six months, he can bend to tie his shoes without much difficulty but he can not remain bent over for more than one minute.

" .   .   .   .   .   .   .   .   .   .   .

"Dr. Morrow told applicant he could return to the same work.

" .   .   .   .   .   .   .   .   .   .   .

"He is not registered for work or looked for work since the injury. He does not go to

Medical evidence on the petition to reopen consists of reports from Thomas F. Morrow, M.D., a specialist in orthopedic surgery, Robert A. Rose, M.D., a specialist in neurology, and Michael J. Patzakis, M.D., associate professor of orthopedic surgery at the University of of Southern California School of Medicine. Both Dr. Morrow and Dr. Rose examined Macias in connection with the original proceedings leading up to the 1975 award and the petition to reopen. Dr. Patzakis only examined Macias in connection with the petition to reopen in the capacity of an independent medical examiner at the referral of the medical bureau of the Division of Industrial Accidents and at the request of Judge Stark.

---

school yet. He went to the 6th grade in Guadalajara. He may learn a new business. He does not know what it would be. He has made no plans as to how to live for the rest of his life. He may operate a filling station. Years ago he was a helper in one. He has no other income. He is now age 46.

". . . . . . . . . . . . . ."

Judge Stark summarized Macias' testimony concerning his disability and complaints at the hearing on July 26, 1977, as follows: "Since he was in Court in April of 1975, his condition has gotten worse. He has more problems in his left leg now, and he has a tremendous burning sensation at the base of his neck and into both shoulders. He also has strong headaches at the top of his head.

"His left leg bothered him very little in April of 1975. He now has cramps in his left calf and on top of the left foot. He also has a burning sensation in the sole of his left foot. When he has cramps in his foot, he loses his balance and has to hold onto the wall at times. When he is asleep, the cramps in his calf wake him up. The burning sensation in the foot is constant. His left foot turns inward when he has cramps in the calf. He has cramps in the calf one to two times a day and three or four times per night. He has to sit up for relief. He massages his left leg and puts alcohol on it. This helps a little. He didn't have this problem as bad in April of 1975.

"He has always had the right leg complaints. These complaints have remained about the same. He has a burning sensation in his neck and into both shoulders which he first noticed about July of 1976. It appeared spontaneously. At times, it lasts three to four days. At times, it goes away in a minute. On some days, he has no problem in this area. He did not have these complaints in April of 1975. They have awakened him at night. He rotates his head in circles and rubs alcohol on his shoulders to get relief. This gives him a little relief.

"His neck condition is getting worse over the past six months. The pain is now more frequent. It happens during the day time too. The last time he had left leg cramps was this very day. He had neck complaints this day.

"He first noticed headaches about the same time as he noticed the neck and shoulder pain. This was about one year ago. The headaches last up to fifteen days at a time. Sometimes they last as little as five or ten minutes, and sometimes they last one or two days. Sometimes he goes to sleep and wakes up with a headache. There is no pattern to when he gets the headaches. He feels left leg cramps when he has a false step or movement. He has not injured himself since April of 1975.

"He still can go up and down stairs with difficulty, but his ability to do this is now less than in April of 1975. He cannot move his foot as rapidly. He can stand 15 to 20 minutes just as he could in April of 1975. He can sit about the same as in April, 1975.

In his initial report of March 13, 1975, Dr. Rose set forth his opinion on Macias' factors of permanent disability as follows: "1. Constant slight low back pain without activity, increasing when he stands over 15-20 minutes, moves quickly, or twists to either side, lifts or carries over 25 lbs., with pain radiating down back of both lower extremities to the heels, especially the right with both legs cramping, with intermittent buckling of right lower extremity causing patient to stumble. Pain estimated to become severe on more than minimal demand for physical effort over 2 to 4 hours.

"He has pain at a point just to the right of the spinal column at approximately belt level. The pain remains generally stationary. He gets relief of his leg pain in standing. His legs then are less numb. He always has a numb feeling in both legs. This wasn't as bad in April of 1975. The numbness in the left leg goes all the way down. In the right leg there is very little to the knee and more from the knee down. The numbness in the left leg goes into the foot. To get relief, he has to stand five to ten minutes. He sometimes drives. He cannot drive as well as in April of 1975 because his car has a clutch.

"He probably could lift 25 pounds, but he hasn't tried. Bending causes pain in the low back. He had these complaints in April of 1975. Since April of 1975, his back has gotten worse since he cannot stand or lift as well. At times, he has to hold down to the armrest of a chair to sit down. This is because his back hurts, and he doesn't have the right balance in his legs.

"     .     .     .

"He hasn't worked since October 14, 1972. He has made no attempt to return to work because he feels he cannot do his job. He feels he could do a job where he could stand or sit and do other things. He has not checked with the Employment Department because he feels they would laugh or joke about his ability to do small jobs.

"     .     .     .

". . . .He takes aspirin every day, two in the morning and two at night. In April of 1975, he was also taking aspirin every day. He believes his lifting ability is now less than it was in April, 1975. He testified previously he did not think he could lift 20 to 25 pounds.

"     .     .     .

"The February 15, 1977, report of Dr. Rose indicates that the headaches, upper back, and neck pain increased in the spring of 1976 and that these stabilized around August or September of 1976, but he understands stabilize to mean that they occur all of the time. In fact, they were hurting all of the time in August or September of 1976. They now hurt the majority of the time. Actually, they only hurt the majority of the time then. (Applicant's testimony was confusing with regard to this history indicated. It appeared in answering the questions that he had to backtrack in order to be consistent. There is some question as to his understanding of stabilize and whether there was a language problem which caused this seemingly inconsistent history.)

"The Summary of Evidence [of the April 24, 1975 hearing] was read to the applicant. He testified that, in fact, the summary was correct as to what his complaints were, but that his complaints are now different. His pain is more intense now. When he walks for long periods of time, he is unable to urinate properly. In April of 1975, he did not have this problem. He cannot drive as before. He did not tell Dr. Springer about his headaches because they didn't hurt a lot when he saw Dr. Springer. He did tell about them to Dr. Avila. He told about them to Dr. Rose in February. He told Dr. Rose that the headaches were stable in August or September of 1976. (Again there may be some confusion as applicant's understanding of the word stable or an inconsistent history.)

"2. *Permanent disability resulting in limitation to at least light work*. Patient is restricted from any repetitive lifting regardless of weight and any single lift of 25 pounds or more."[8] (Italics added.) Dr. Rose recommended Macias be fitted with a back brace, given analgesics, and that future medical care be provided "as necessary."

Reporting on February 15, 1977, in connection with the petition to reopen, Dr. Rose observes that Macias' condition has continued to deteriorate. Dr. Rose notes the increase in back pain and the development of headaches and neck pain. Dr. Rose opines Macias should not only be restricted to light work because of his back but also independently restricted to light work because of his neck problems. The head symptomatology, Dr. Rose believes, "further limits him in his ability to deal with his employment situation."[9] Dr. Rose relates these additional conditions to the industrial injury.

---

"He was having neck, shoulder, and head complaints last summer. He believes they have gotten sharper during the past six months and that his condition over the past six months is getting worse. He now has nervous problems . . . ."

[8] A disability resulting in limitation to light work "contemplates the individual can do work in a standing or walking position, with a minimum of demands for physical effort." (Schedule for Rating Permanent Disabilities Under Provisions of the Labor Code of the State of California (hereinafter Rating Schedule), Guidelines for Work Capacity, par. f; see *Johns-Manville Products Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 87 Cal.App.3d 740, 750-751, fn. 6 [151 Cal.Rptr. 215]; 1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1980) § 11.02[3]; 1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed. 1978) § 7.32, pp. 237-241; Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) § 15.17, pp. 540-543; St. Clair, Cal. Workmen's Compensation Law and Practice (1980) § 8.5, pp. 138-141.)

A limitation to light work is a 50 "standard rating." "Standard rating" refers to the permanent disability rating before adjustment for age and occupation. (See section 4660, subd. (a); 1 Hanna, *op. cit. supra*, § 11.03; 1 Herlick, *op. cit. supra*, § 7.34-7.37; California Workmen's Compensation Practice, *op. cit. supra*, § 15.18-15.25; Welch, Fundamentals For Applying California Schedule for Rating Permanent Disabilities (1975) pp. 3-6.)

[9] Dr. Rose's report of February 15, 1977, states in regard to disability: "The patient continues to have increasing symptoms related to his low back problems. He is also now developing problems with his head and neck. These are all new symptoms or intensification of symptoms that he had on my prior examination of February 1975. It is felt at this time that he has developed new and further difficulties. They have reached a new level or plateau and have not materially changed in the last six months. I would therefore suggest that he be considered permanent and stationary with the following factors of disability: "1. Head pain as characterized by pain in the suboccipital region with radiation to the vertex and occasionally to the forehead occurring every several days, lasting for several days at a time, frequently relieved with analgesics, occasionally not, frequently associated with dizziness, blurred vision, loss of equilibrium, depression, and anxiety; pain considered constantly slight to moderate becoming intermittently moderate with any degree of physical or emotional stress.

In connection with the original proceedings, Dr. Morrow, who performed the 1973 surgery upon Macias, opined Macias could return to work as a waiter. Dr. Morrow did place a work restriction upon Macias to "avoid any type of heavy duty lifting individually where he is called upon repeatedly to lift weights alone in excess of 50 pounds on a continuous basis." This is the customary restriction placed by Dr. Morrow upon patients who have undergone the type of surgery performed upon Macias.[10] Dr. Morrow's report apparently provided the basis for 21 1/2 percent permanent disability rating in 1975.

In connection with the petition to reopen, Dr. Morrow believes Macias' condition and disability are unchanged. Further, Dr. Morrow opines the neck and head difficulties are unrelated to the industrial injury.

"2. Neck pain as characterized by pain in the lower regions of the neck with radiation to both shoulders and into the upper part of both arms, down the lateral aspects of both arms to all the fingers bilaterally with weakness in both arms, particularly the left upper extremity with physical evidence of tenderness and spasm in the neck, limitation of lateral rotation, and electromyographic evidence of spasm; pain considered constant slight to moderate becoming intermittently moderate with any degree of pushing, pulling, lifting arms overhead, or turning head, becoming greater than moderate with any prolongation of such activities.

"3. Back pain as characterized by pain in the lower back with radiation to both buttocks, down the lateral aspects of both legs all the way down to below the knees and in the right leg all the way to all the toes, particularly the great toe and the left leg all the way down to the foot, but not including the toes with numbness and paresthesias in this pain distribution and with weakness as well bilaterally, particularly at the knee, but in the right somewhat at the ankle as well with physical evidence of tenderness and spasm in the lower back, evidence of a laminectomy scar site, difficulties with flexion and positive straight leg raising bilaterally and sciatic stretch testing bilaterally with electromyographic evidence of denervation/re-innervation, spasm and irritability in the lower back and abnormalities in the hamstrings on the right; pain considered constantly slight to moderate becoming moderate with any degree of pushing, pulling, bending, stooping or lifting, becoming greater than moderate with any prolongation of such activities.

"He is considered limited to light work on the basis of his back difficulty, but he is also now considered to be limited to light work on the basis of his neck problems, independent of his back problems. He is also having head symptomatology that further limits him in his ability to deal with his employment situation. He should be provided future medical care. He will require intermittent professional attention for an extended period of time, perhaps throughout life, should be given analgesics and tranquilizers as well as home physiotherapeutic techniques and muscle strengthening exercises. Once again he should be given a back brace to be worn 10% of the time and sleeping on a bedboard placed between mattress and box springs. He should be wearing a cervical soft collar and sleeping on a cervical pillow.

"Present permanent disability is definitely due to the injury of October 14, 1972, and all the new and further disability is related to the original injury."

[10]A disability precluding "heavy lifting" contemplates "the individual has lost approximately half of his pre-injury capacity for lifting." (Rating Schedule, Guidelines for Work Capacity, par. c) A disability precluding heavy lifting is a 20 standard rating.

Dr. Patzakis, in his report of December 16, 1977, opines Macias should be limited to light work, stating in pertinent part: "His condition can be considered permanent and stationary for rating purposes. He has complained of neck pain and upper extremity problems; his x-rays taken by the physician, of his neck, have been reported as normal. His EMG of the upper extremities has also been reported as normal. [¶] At this time, there is no evidence of any neurological deficit. The circumferential hypesthesia he has does not follow any root or dermatome distribution and is not from an organic standpoint. [¶] He complains of pain on top of his head, but this does not appear to be related to his injury and he probably should have these evaluated by his private physician. [¶] His subjective complaints should be considered moderate and based on his objective findings which include a positive EMG and a positive myelogram in the past with subsequent surgery and localized degenerative arthritis at L4-5. This patient's disability would preclude him to light work. No further treatment is necessary at this time. Provisions should be made for the patient to have 1-2 check-ups a year."

Upon cross-examination Dr. Patzakis stated that in his opinion there has been no real change or progression in Macias' condition from March 1975. According to him, there is no objective evidence of deterioration but there is an increase in symptomatology. The headaches and shoulder problems, Dr. Patzakis maintains, are unrelated to the industrial injury. Of importance is that Dr. Patzakis states that if Dr. Patzakis had seen Macias in March 1975 the doctor would have placed the same work restriction upon Macias. In other words, Dr. Patzakis apparently would have concurred in Dr. Rose's 1975 permanent disability evaluation, had he been asked.

In granting the petition to reopen and in finding Macias limited to light work, Judge Stark stated in his opinion on decision: "I rely on the opinion of the independent medical examiner, Michael Patzakis, M.D., in finding that there is good cause to reopen; that applicant sustained permanent disability of 52%, equal to $15,746.25.... Dr. Patzakis testified that his restriction of applicant to light work is not really a result of an increase in applicant's disability, but is a result of his evaluation of the applicant's disability. *That is to say, that had he seen applicant in March of 1975, based on the findings then made and evidence available he would probably have then limited him to light work.* Dr. Patzakis' opinion indicates that there is good cause to reopen to increase permanent disability, because the amount previously awarded applicant appears to be inadequate...." (Italics added.)

Judge Stark further explained his theory of "good cause" in his report to the Board on petitioners' petition for reconsideration as follows: "There is good cause to reopen....[¶]....[¶] [Petitioner] argues that there is no good cause to reopen because there is no 'new and further disability.' Certainly there is further disability. However, [petitioner] argues it is not 'new' disability since Dr. Patzakis testified there is no change in applicant's condition, only in the amount of disability he assigns to it. [¶] It is submitted that this greater disability is, in fact, new disability as well. To deem it otherwise would deprive applicant of his right to increased benefits for the sake of semantic differentiation. [¶] There is no question that applicant is more disabled than indicated by the previous permanent disability rating he received. Basic justice requires that he now be given that permanent disability rating which properly reflects his true disability. Good cause to reopen does exist. [¶] The order granting applicant's Petition to Reopen and the Findings and Award of August 27, 1979 are supported by substantial evidence and most particularly, the opinion of the independent medical examiner, Michael Patzakis, M.D....."

The Board denied reconsideration. It incorporated by reference Judge Stark's report. It also stated: "Labor Code Section 5803 gives the Board continuing jurisdiction over its award. It may rescind, alter or amend such awards if good cause appears. Good cause exists here because either the Board made an erroneous decision initially or the applicant has sustained new and further disability. (See Labor Code Section 5410.)"

### REOPENING OF PRIOR DECISION

Both Macias and the Board assert that the reopening of Macias' award and increasing the permanent disability was proper under the "new and further disability" concept of section 5410 and/or the "good cause" standard of section 5803.

### I

At the outset we observe that sections 5410, 5803 and 5804 permit reopening of a case upon a petition filed within five years of the date of injury. (*Aliano* v. *Workers' Comp. Appeals Bd.* (1979) 100 Cal.App.3d 341, 365 [161 Cal.Rptr. 190].) While Judge Stark's decision granting reopening issued more than five years after the injury, there was still jurisdiction to render the decision as Macias had filed his

petition to reopen within five years of the date of injury. (*Ibid.*; 1 Hanna, *op. cit. supra*, § 9.02[3].)

"Section 5410 permits the reopening of a prior decision of the WCAB for 'new and further disability' upon the filing of a petition of the injured employee within five years of the date of injury. (*Nolan* v. *Workers' Comp. Appeals Bd.* (1977) 70 Cal.App.3d 122 [138 Cal.Rptr. 561]; see generally, 1 Hanna, *op. cit. supra*, §§ 9.01-9.03; 1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed. 1978) §§ 14.5-14.9; Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) §§ 4.19, 12.4-12.14; Mastoris, *The Statutes of Limitation in Workers' Compensation Proceedings* (1979) 15 Cal. Western L.Rev. 32, 61-65, 67-74 (hereinafter Mastoris, *op. cit. supra*, 15 Cal.Western L.Rev. 32); see also, *Standard Rectifier Corp.* v. *Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 287, 290 [54 Cal.Rptr. 100, 419 P.2d 164]; *Pizza Hut of San Diego, Inc.* v. *Workers' Comp. Appeals Bd.* (1978) 76 Cal. App.3d 818, 822 [143 Cal.Rptr. 131].) Sections 5803-5805 permit the reopening of a previously adjudicated case for 'good cause' upon a petition filed by a party in interest within five years from the date of injury. (1 Hanna, *op. cit. supra*, § 9.02; Mastoris, *op. cit. supra*, 15 Cal. Western L.Rev. at pp. 67-72.) (For a discussion of the similarities and differences between § 5410 and §§ 5803-5805, see *Zurich Ins. Co.* v. *Workmen's Comp. Appeals Bd.* (1973) 9 Cal.3d 848, 854-858 [109 Cal.Rptr. 211, 512 P.2d 843] (conc. opn. of Sullivan, J.); Mastoris, *op. cit. supra*, 15 Cal. Western L.Rev. at pp. 67-72; Cal. Workmen's Comp. Practice (Cont.Ed.Bar 1973) *supra*, § 12.8.)" (*Aliano, supra*, 100 Cal.App.3d at p. 365, fn. 15.)

Section 5410 fails to define the phrase "new and further disability" and it has not been given a comprehensive definition by judicial interpretation. (1 Hanna, *op. cit. supra*, § 9.03[2].) Thus, its meaning is not entirely clear. (*Pizza Hut of San Diego, Inc.* v. *Workers' Comp. Appeals Bd.* (1978) 76 Cal.App.3d 818, 825 [143 Cal.Rptr. 131].) ■ It is clear, however, that the phrase refers to disability which must be both "new" and "further." (1 Hanna, *op. cit. supra*, § 9.03[2].) "The phrase 'further disability' presupposes that such disability is in addition to that disability for which proceedings were timely commenced or for which compensation already was paid (*Kauffman* v. *Industrial Accident Com.*, 37 Cal.App. 500, 502-503 [174 P. 690]). It has also been recognized '[s]ome significance must be given to the word "new".' (See *Westvaco etc. Corp.* v. *Ind. Acc. Com.*, 136 Cal.App.2d 60, 64-68 [288

P.2d 300].)" (*Pizza Hut of San Diego, Inc., supra*, 76 Cal.App.3d at p. 825.)

"The term 'new and further disability' has been defined to mean disability which results from some demonstrable change in an employee's condition." (1 Herlick, *supra*, § 14.5.) "'New and further disability can develop only after a cessation of temporary disability or an interruption of temporary disability by a period of nondisablement. A new period of temporary disability or a change to permanent disability is a new and further disability. A gradual increase in disability is a new and further disability. [Citation.] A permanent disability is a new and further disability. [Citations.] Permanent disability from the outset, however, such as loss of an eye, does not constitute new and further disability. [Citation.] [¶] 'Historically, a change in physical condition necessitating further medical treatment had been considered new and further disability whether or not accompanied by time lost from work. [Citation.]' (Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) § 4.21, pp. 108-109; see also 1 Hanna, *op. cit. supra*, § 9.03[2].) Thus, '[c]ommonly, new and further disability refers to a recurrence of temporary disability, a new need for medical treatment, or the change of a temporary disability into a permanent disability.' (Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) § 12.12, p. 410.)" (*Pizza Hut, supra*, 76 Cal.App.3d at p. 825.)

Thus, if Macias' condition is unchanged from the time of the original decision in 1975, there is no "new and further disability" within the meaning of section 5410 to permit reopening of the case. ■ However, irrespective of whether or not there has been "new and further disability," "good cause" to reopen under section 5803 may exist. (See *Aliano* v. *Workers' Comp. Appeals Bd., supra*, 100 Cal.App.3d at p. 366.)

"To reopen for "good cause" there must exist some ground, not within the knowledge of the appeals board at the time of making the former award or orders which render said original award or orders inequitable; this cannot be premised upon a mere change of *opinion* by the appeals board. (*Walters* v. *Industrial Acc. Com., supra*, 57 Cal.2d 387, 394 [20 Cal.Rptr. 7, 369 P.2d 703].) 'Merely cumulative' evidence is insufficient for 'good cause.' (*Id.* at p. 395.) In the absence of 'good cause,' the appeals board is powerless to act. (*Merritt-Chapman & Scott Corp.* v. *Indus. A.C.* (1936) 6 Cal.2d 314, 315-317 [57 P.2d 501].) What constitutes 'good cause' depends largely on the circumstances of each case.

(*Bartlett Hayward Co.* v. *Indus. Acc. Com.* (1928) 203 Cal. 522, 532 [265 P. 195].) While the WCAB's determination of what constitutes 'good cause' may be accorded great weight it is not conclusive. (*Ibid.*)" (*Aliano, supra,* 100 Cal.App.3d at p. 366.)

The principle of reopening for "good cause" does not permit an attempt to simply relitigate the original award. A petition to reopen may not be used to litigate issues which should have been raised by a timely petition for reconsideration. (See *Young* v. *Industrial Acc. Com.* (1944) 63 Cal.App.2d 286 [146 P.2d 693]; *Royster* v. *Workmen's Comp. Appeals Bd.* (1974) 40 Cal.App.3d 412 [115 Cal.Rptr. 210].) "Good cause" to reopen does not consist of medical evidence obtained subsequent to the original decision which merely disagrees with the medical opinion relied upon by the Board at the time of the original decision. (See *Consolidated Western Steel Div.* v. *Industrial Acc. Com.* (1962) 205 Cal.App.2d 275, 277-278 [23 Cal.Rptr. 147]; *Clark* v. *W.C.A.B.* (1980) 45 Cal.Comp.Cases 499.)

"Grounds commonly urged as 'good cause' for reopening…are (1) mistake of fact, occasioned by failure or inability to produce certain evidence at a prior hearing; (2) mistake of law disclosed by subsequent appellate court ruling on the same point in another case; (3) inadvertence, as when the Appeals Board issues a decision under the mistaken impression that its Medical Bureau had made an adverse report in the case; (4) newly discovered evidence which is more than merely cumulative; and (5) fraud, such as may be perpetuated through perjury and false statements. The mere fact that the Appeals Board itself has changed its mind as to the same facts is not good cause for revision of a decision. The ground most frequently urged as good cause is *mistake of fact*, reopening being sought on the basis of evidence alleged to be material and newly discovered since the prior hearing." (1 Hanna, *op. cit. supra*, § 9.02[2][c], pp. 9-14.) (Italics in original.)

█ "Through many court decisions it has become well settled that, in order to constitute 'good cause' for reopening, new evidence (a) must present some good ground, not previously known to the Appeals Board, which renders the original award inequitable, (b) must be more than merely cumulative or a restatement of the original evidence or contentions, and (c) must be accompanied by a showing that such evidence could not with reasonable diligence have been discovered and produced at the original hearing." (1 Hanna, *supra*, § 9.02[2][d]; see *Merritt-Chapman & Scott Corp.* v. *Indus. A. C.* (1936) 6 Cal.2d 314 [57 P.2d

501]; *Clendaniel* v. *Ind. Acc. Com.* (1941) 17 Cal.2d 659 [111 P.2d 314].) ■ Reopening upon the claim of newly discovered evidence is not a matter of right. (*Clendaniel, supra,* 17 Cal.2d at p. 661.)

"[The Board's] power to re-open the case in the exercise of its continuing jurisdiction, 'invoked on the ground of newly discovered evidence, should be exercised with great caution and when fraud, inadvertence, mistake or excusable neglect are clearly shown. Otherwise, the process of introducing evidence before the [Board] would be interminable and the [Board] might be held to abuse its discretion in the exercise of its power.…'" (*Clendaniel, supra,* 17 Cal.2d at p. 663.)

■ "Good cause" includes facts which for the first time develop subsequent to the decision sought to be reopened. (*Pullman Co.* v. *Industrial Acc. Com.* (1946) 28 Cal.2d 379, 388 [170 P.2d 10]; *Ryan* v. *Workmen's Comp. App. Bd.* (1968) 265 Cal.App.2d 654, 661-662 [72 Cal.Rptr. 140]; see also *Jones* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 476 [67 Cal.Rptr. 544, 439 P.2d 648].) Thus, in *Ryan, supra,* "good cause" to reopen was found where spinal surgery subsequent to the original decision demonstrated the true nature of injury and disproved that the claim was based on fraudulent complaints as was held in the original decision.

■ Of course, while we have separately discussed the concepts of "good cause" and "new and further disability," in application to a request to reopen these concepts may intertwine. "Good cause" includes "new and further disability." (Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973), *supra,* § 12.12.) "New and further disability" may help establish "good cause." (See *Aliano, supra,* 100 Cal.App.3d at p. 366.) For example, the change or lack thereof in the injured's condition may demonstrate his condition was originally misdiagnosed and therefor warrant a total reevaluation of the injured's status. (*Ibid.*)

## II

■ Respondents argue either "new and further disability" or "good cause" exists. In evaluating this question, we are mindful that what constitutes "good cause" under section 5803 is also applicable to employer's petitions to reopen to rescind, alter or *reduce* a prior award.

For support of new and further disability respondents point out that Macias testified that his condition had deteriorated and that he was un-

able to perform work duties. Had the Board relied upon Dr. Rose in reopening the case "new and further" disability would clearly exist. Dr. Rose reports marked deterioration of Macias' condition and development of neck, shoulder, and head discomfort; Dr. Rose relates all this to the original industrial injury. The Board, however, has instead relied specifically upon Dr. Patzakis and not Dr. Rose. Dr. Patzakis opines the head and shoulder problem are unrelated to the industrial injury. Dr. Patzakis found no objective evidence of neck disability; he does not discuss whether the neck discomfort is related to the industrial injury. Further, the light work restriction is placed upon Macias by Dr. Patzakis not because of subjective complaints but upon his assessment of Macias' disability.

The problem with Macias' testimony of increased subjective complaints is that the only increase under Dr. Patzakis' opinion that is related to the industrial injury is for the back. Conditions unrelated to the industrial injury are not "new and further disability." As to the subjective complaints related to the injury, Dr. Patzakis neither found objective evidence supporting such increase in subjective complaints nor found them significantly changed.

As to the Board's reliance upon the fact Macias has not returned to work, this too does not here necessarily establish a basis to reopen. At the time of the original decision Macias had not returned or even looked for work; he did not feel he could do the work of a waiter which he did at the time of injury. In connection with the petition to reopen Macias testified he had made no attempt to return to his job as a waiter or to any other work. Thus, the situation herein is unlike the circumstances where at the time of the original award it is believed the injured will be able to return to work consistent with the disability then found but subsequent attempts to work demonstrate the injured's inability to engage in such activities. (See *Pullman Co.* v. *Industrial Acc. Com., supra*, 28 Cal.2d at p. 388.)

Dr. Patzakis' opinion also does not establish "good cause" to reopen. His opinion is merely a reevaluation of Macias' disability as it existed at the time of the original decision. No *newly developed* facts are stated by Dr. Patzakis for his difference of opinion with the originally determined disability. (Compare *Consolidated Western Steel Div.* v. *Industrial Acc. Com., supra*, 205 Cal.App.2d at pp. 277-278 with *Ryan* v. *Workmen's Comp. App. Bd., supra*, 265 Cal.App.2d at pp. 661-662.)

Macias argues that the opinion of Dr. Patzakis that he would have placed the same "light work" restriction upon Macias at the time of the original decision is pure speculation, unworthy of belief. (*Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 169 [93 Cal.Rptr. 15, 480 P.2d 967]; *Place* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 378-379 [90 Cal.Rptr. 424, 475 P.2d 656].) A review of Dr. Patzakis' entire report and testimony, however, reveals that this opinion of Dr. Patzakis is based upon reasonable medical probability and not upon pure speculation. (*Gay* v. *Workers' Comp. Appeals Bd.* (1979) 96 Cal.App.3d 555, 564 [158 Cal.Rptr. 137].)[11]

Therefore, we conclude that the Board's decision granting reopening and increasing the permanent disability award must be annulled. The Board should reconsider the question of reopening in light of our opinion and conduct such further proceedings as may be necessary.

### FUTURE MEDICAL TREATMENT

Finally, we are asked to review the award of future medical treatment. In the original 1975 award, future medical treatment was not awarded. Petitioners assert that no good cause to reopen the issue of need for future medical treatment has been shown and that substantial evidence does not support the award thereof.

■ In their petition for reconsideration of Judge Stark's decision, however, petitioners only challenged the award of future medical treatment on the basis that substantial evidence did not support the award thereof. They did not assert therein that no good cause to reopen the question of future medical treatment existed. This being so, they may not raise this point for the first time in their subsequent petition for writ of review. (§ 5904; *Cedillo* v. *Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 450, 455-456 [96 Cal.Rptr. 471, 487 P.2d 1039].) Our review of the award of future medical treatment is accordingly limited to whether substantial evidence supports the award thereof.

---

[11]If Dr. Patzakis' opinion is regarded as pure speculation, then, similarly, since Dr. Patzakis had not previously examined Macias, his opinion on the question of new and further disability would be suspect.

We also wonder what respondents' position would be had petitioners sought to reopen to reduce the permanent disability award and Dr. Patzakis had opined Macias' permanent disability was actually substantially *less* than that originally found by Judge Lippert. (See *Southern Calif. Rapid Transit District* v. *W.C.A.B.* (*Shaw*) (1980) 45 Cal.Comp.Cases 368.)

■ While indicating no further care was needed at this time, Dr. Patzakis does recommend Macias have checkups one or two times per year. In his report of January 31, 1977, Donald A. Springer, M.D., notes the probability of need for further surgery. Thus, substantial evidence supports the award of future medical treatment.

### SUMMARY AND DISPOSITION

The Board's decision granting Macias' petition to reopen insofar as it increases the permanent disability award is annulled. The matter is remanded to the Board for further consideration and proceedings in light of our opinion.

Allport, J., and Potter, J., concurred.

The petition of respondent Macias for a hearing by the Supreme Court was denied October 22, 1980. Bird, C. J., was of the opinion that the petition should be granted.