[Civ. No. 25739. Fourth Dist., Div. Two. Nov. 13, 1981.]

COUNTY OF SAN BERNARDINO, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and ANGIE
RAMIREZ, Respondents.

·COUNSEL

Parker & Dally, Robert L. Dally and Joan E. Partritz for Petitioner.

Welebir & Brunick and Ronald A. Miller for Respondents.

## OPINION

**KAUFMAN, Acting P. J.**—We granted the petition of the County of San Bernardino (hereafter County) to review a decision and order after reconsideration of the Workers' Compensation Appeals Board (hereafter WCAB or the Board) permitting Angie Ramirez (hereafter the applicant) to reopen three workers' compensation cases. On review County contends that the Board acted in excess of its jurisdiction in finding that applicant had suffered a "new and further disability" and that its decision is not supported by substantial evidence on the whole record. Although the case is close we conclude the Board's decision is legally authorized and supported by substantial evidence. Accordingly, the decision of the Board will be affirmed.

### I.

### *Facts*

Applicant was employed as a community health worker by the County. On February 13, 1978, applicant filed three applications for adjudication of claim for alleged injuries to her back arising out of and in the course of her employment. The first injury (claim No. 61521) al-

legedly occurred on July 26, 1976, when applicant lifted a full file box out of the trunk of her car. The second injury (claim No. 61522) was allegedly sustained on or about November 15, 1977, when applicant picked up and placed a five- or six-year-old child weighing about thirty pounds on a scale. The third injury (claim No. 61523) allegedly occurred on January 23, 1978, when applicant picked up a baby scale weighing approximately 25 pounds.

Pursuant to a stipulation of the parties after hearing, an order was made awarding applicant temporary disability on all three claims and permanent disability of 11 percent[1] for the January 23, 1978, injury (No. 61523), the parties having agreed that the other claimed incidents did not result in permanent disability. Applicant did not seek reconsideration of the award.

On about May 7, 1980, applicant filed a petition to reopen two of her claims (Nos. 61522, 61523). On September 10, 1980, applicant filed a petition to reopen her remaining claim (No. 61521). In her petitions, applicant alleged: "There has occurred a worsening of the Applicant's condition justifying a resumption of temporary disability payments and a higher Permanent Disability Award."

The petitions were consolidated and heard on December 9, 1980. The evidence presented at the hearing consisted of the testimony of applicant and medical reports from Warren S. Hayes, M.D., and Louis Dean, M.D. Dr. Hayes had examined applicant in connection with the 1978 proceedings (see fn. 1, *ante*); Dr. Dean had not.

Applicant testified that since her injury in 1978, the pain in her back had worsened, that she could no longer lift objects weighing more than 25 pounds nor sit longer than 5 or 10 minutes or stoop or bend over without feeling intense pain. However, when the "Current Status" portion of Dr. Hayes' medical report of April 7, 1978[2] was read to her

---

[1] The permanent disability award of 11 percent was apparently the result of a compromise between the ratings that would have resulted from the reports of applicant's medical examiner, Warren S. Hayes, M.D., and the County's medical examiner, Eskild A. Reinhold, M.D. Dr. Hayes' medical report dated April 7, 1978 (discussed *infra* at fn. 2) would have produced a permanent disability rating of 20 percent based upon a work restriction precluding heavy lifting.

Dr. Reinhold's medical report dated July 5, 1978, imposed no work restriction and would have produced a rating of 6 percent.

[2] In his 1978 report, under the caption of "Current Status," Dr. Hayes stated: "To the time of this examination [applicant] has experienced low back pain with sitting for

describing her symptoms at that time, applicant stated that her condition was the same.

With the exceptions discussed *infra*, Dr. Hayes' report of April 21, 1980, mirrored his 1978 report.[3] The 1980 report did state however that "[p]ain increased in intensity toward the beginning of 1980 and has remained so to the time of this examination," and the work restriction imposed now precluded "repeated bending and prolonged stooping" in addition to the restriction on "heavy lifting" set forth in the 1978 report.

10 minutes, bending, stooping, lifting 20 pounds and with driving or riding 10 or 15 miles. She has been 'nervous' when the 'pain has been bad.' Pain has not occurred with cold and damp weather or with coughing and sneezing. Mrs. Ramirez described pain extending down both lower extremities deep inside at the level of the bone, extending to the calf. She has experienced tingling in both lower extremities extending to the heels. [¶] Mrs. Ramirez was not provided with a back brace or lumbosacral support. She was not currently on any medication for her back. She was working at her regular job."

Under the caption "Discussion," Dr. Hayes' 1978 report continued in relevant part: "Factors of permanent, partial impairment would be inconstant slight pain with the activities described under current status, becoming slight to moderate when those activities were continued or repeated. Objective factors of impairment would be painful limitation in motions of the trunk, hips and lower extremities and the various maneuvers of low back examination, and low back tenderness. [¶] It would be my opinion this impairment would preclude heavy lifting. Mrs. Ramirez has been able to work at her regular job in spite of symptoms. . . ."

[3]Under the headings "Interim History" and "Current Status" Dr. Hayes' 1980 report reads in relevant part:

"Mrs. Ramirez continued to experience low back pain. Pain increased in intensity toward the beginning of 1980 and has remained so to the time of this examination. [¶] . . . To the time of this examination Mrs. Ramirez has experienced low back pain with sitting for one hour, bending, and with lifting 25 pounds. Pain has occurred toward the end of a work day if she has been setting up a clinic, which has involved lifting and carrying 25 pound scales and lifting tables with a fellow worker and carrying them. She has had to do this about eight times per month. Pain has not occurred with cold and damp weather or with coughing and sneezing.

"Mrs. Ramirez described radiation of pain down the posterior aspect of each lower extremity to the ankle, with tingling paresthesias in that same distribution.

"Mrs. Ramirez has not been using a back brace or a lumbosacral support. She has been taking APC Tablets almost every day, as frequently as every four hours when the pain has been bad. She was continuing to work at her regular job."

Under the heading "Discussion" the 1980 report continued in relevant part: "Factors of permanent, partial impairment were inconstant slight pain with the activities described under Current Status, becoming slight to moderate when those activities were continued or repeated, with bilateral lower extremity radiation of pain and paresthesias and with pain occurring after driving about five minutes. Objective factors of impairment were painful limitation in motions of the trunk and hips, pain with all maneuvers of low back examination, a right Ely's Sign, low back tenderness and left lower extremity sensory deficit. Left thigh atrophy was considered secondary to left knee surgery, rather than to the low back problem. [¶] It was my opinion this impairment would preclude heavy lifting, repeated bending and prolonged stooping. Mrs. Ramirez had been able to continue working at her regular job in spite of pain."

Believing that the decision in *Nicky Blair's Restaurant* v. *Workers' Comp. Appeals Bd.* (*Macias*) (1980) 109 Cal.App.3d 941 [167 Cal. Rptr. 516] (hereafter referred to as *Macias*) was controlling, the WCAB Judge denied the petitions to reopen finding that no new and further disability had been shown. Applicant petitioned for reconsideration. In his recommendation to the Board to deny reconsideration, the WCAB judge stated that he had not credited the applicant's testimony that her condition had substantially worsened because he felt it was inconsistent with the fact that she was able to continue working at the same job. He concluded that the medical reports presented at the time of the original award were basically identical to the reports submitted in support of the petitions to reopen and that there was no showing of any substantial worsening of applicant's condition.

Board nevertheless granted reconsideration and, based on its review of the record, concluded that the applicant's condition had worsened, distinguishing *Macias*. While noting that a trial judge's credibility assessments are entitled to great weight, the Board did not agree that the applicant's testimony that her condition had worsened was inconsistent with the fact that she remained on the job, noting Dr. Hayes' statement that she "'had been able to continue working at her regular job *in spite of pain*.'" Moreover, the Board observed that the assessment of the extent of permanent disability is more appropriately made with reference to what the applicant should or should not have done in the exercise of reasonable medical discretion than with reference to what the applicant actually did despite pain that might have caused a less determined person to desist. The Board ordered that the petitions to reopen be granted and remanded the cases for further proceedings.

## II.

Several sections of the Labor Code[4] authorize the Board to reopen a decision or award. At issue in the instant case is the Board's power to reopen upon a showing of "new and further disability" under section 5410.[5] Section 5803 authorizes reopening for a "good cause." However, the provisions of section 5803 are of little assistance in the

---

[4]All statutory references herein will be to the Labor Code unless otherwise specified.

[5]Section 5410 provides: "Nothing in this chapter shall bar the right of any injured employee to institute proceedings for the collection of compensation within five years after the date of the injury upon the ground that the *original injury has caused new and further disability*. The jurisdiction of the appeals board in such cases shall be a continuing jurisdiction at all times within such period. This section does not extend the limitation provided in Section 5407." (Italics added.)

case at bench. "New and further disability" constitutes "good cause" for reopening (see *Nicky Blair's Restaurant* v. *Workers' Comp. Appeals Bd., supra,* 109 Cal.App.3d at p. 957) and since the only "good cause" urged by the applicant in her petitions to reopen was "new and further disability," an abstract discussion of what otherwise might constitute good cause would not aid our review. (A thorough discussion of what constitutes "good cause" is contained in *Nicky Blair's Restaurant* v. *Workers' Comp. Appeals Bd., supra,* 109 Cal.App.3d at pp. 955-957.) Suffice it to say that neither the desire by one of the parties to relitigate the original decision nor a change of mind on the part of the Board constitutes "good cause" for reopening. (See *Nicky Blair's Restaurant* v. *Workers' Comp. Appeals Bd., supra,* 109 Cal.App.3d at p. 956.)

Although the term "new and further disability" has not been comprehensively defined (see *Nicky Blair's Restaurant* v. *Workers' Comp. Appeals Bd., supra,* 109 Cal.App.3d at p. 954), it is clear that the disability referred to must be both "new" and "further." (*Id.*) And it is established that a gradual increase in disability constitutes a "new and further disability." (*Id.,* at p. 955; *Pizza Hut of San Diego, Inc.* v. *Workers' Comp. Appeals Bd.* (1978) 76 Cal.App.3d 818, 825 [143 Cal.Rptr. 131].) ▮ Thus, if there is substantial evidence to support the Board's determination that the applicant's condition had worsened, there was "new and further disability" within the meaning of section 5410 and the Board had jurisdiction to grant the petitions to reopen.

Of course, the disability ratings that would result from each of the medical reports submitted in support of the petitions to reopen are greater than those produced by the 1978 medical reports, but that fact alone is insufficient to authorize reopening. It might establish "further" disability but it does not establish "new" disability, and that is precisely the argument of County on review, that the applicant's symptoms reported in 1980 are essentially the same as they were reported in 1978, and while the original stipulated rating may have been erroneous, that provides no basis for reopening.

There are at least two flaws in County's argument. First, it ignores the authority of the Board to reject credibility assessments of the trial judge in appropriate circumstances. Second, it is not entirely accurate to say that the description of the applicant's condition in Dr. Hayes' 1980 medical report is the same as that in his 1978 report.

▮ It is unquestionably true that in most instances credibility assessments made by the judge who observed the witnesses and heard the

testimony should be accorded great weight. (See *Hurwitz v. Workers' Comp. Appeals Bd.* (1979) 97 Cal.App.3d 854, 864-865, fn. 9 [158 Cal.Rptr. 914], and cases there cited.) ▮ However, here the basis for the trial judge's disbelief of the applicant's testimony was not her demeanor or the manner in which she testified but rather his belief that her testimony her condition had worsened was inconsistent with her remaining on the job. That·was an assessment as well made by the Board as the trial judge, and we agree with the Board that there was no necessary inconsistency. The medical reports indicated that the applicant remained on the job despite her pain, and certainly an applicant should not be penalized for enduring pain in attempting to remain self supporting.

Moreover, Dr. Hayes reported that the applicant's pain substantially increased early in 1980 and continued at the increased level. Although that portion of the doctor's report was undoubtedly based on statements made by the applicant, there was nothing whatever in the remainder of the report that cast doubt upon that statement, notwithstanding that the doctor conducted a very thorough physical examination of the applicant that included many pain evoking movements and tests. Dr. Hayes' 1980 report also specifically enumerated as one factor of impairment "pain occurring after driving about five minutes," whereas the 1978 report indicated pain "with driving or riding 10 or 15 miles." The 1980 report also sets forth the finding of a positive "right Ely Sign" and "left lower extremity sensory deficit" not mentioned in the 1978 report. Further, the 1980 report states that the applicant was taking "APC Tablets almost every day, as frequently as every four hours when the pain has been bad," whereas the 1978 report stated that the applicant "was not currently on any medication for her back." (See fns. 2 and 3, *ante.*)

In the face of all this[6] we cannot say that the Board's conclusion that the applicant's condition had gradually worsened is not supported by substantial evidence.

---

[6]We have placed no reliance on the additional work restriction found in the 1980 report but not in the 1978 report, precluding repeated bending and prolonged stooping, because in our view the 1978 report would have been even more supportive of such a work restriction than the 1980 report. (Compare fns. 2 and 3, *ante.*) Whether the restriction on repeated bending and prolonged stooping was simply inadvertently omitted from the 1978 report or whether its inclusion in the 1980 report was based on a conclusion by Dr. Hayes that the applicant's condition had worsened was not clarified by cross-examination of the physician and were it necessary to rely on that matter in this review, we should be required to indulge a presumption favorable to the validity of the Board's order.

The *Macias* decision, which we think has been much misunderstood, is fundamentally distinguishable from the case at bench and, in fact, properly understood supports our conclusion. In the *Macias* case the Board had available to it a number of medical reports. One was a report by Dr. Rose stating that Macias' condition had continued to deteriorate, noting an increase in back pain and the development of headaches and neck pain, all of which he concluded were causally related to the industrial injury. (*Nicky Blair's Restaurant v. Workers' Comp. Appeals Bd., supra,* 109 Cal.App.3d at p. 950.) Another was the report of Dr. Patzakis which, together with his testimony on cross-examination, indicated that there had been no real change or progression in Macias' condition; that there was no objective evidence of deterioration; and that while there was evidence of an increase in symptomatology, most, if not all of it resulted from problems not related to the industrial injury. (*Id.,* at p. 952.)

In granting Macias' petition to reopen the Board relied exclusively on the report and testimony of Dr. Patzakis, and the Court of Appeal annulled the Board's order because Dr. Patzakis' report and testimony did not constitute substantial evidence of "new and further disability." The court stated: "Had the Board relied upon Dr. Rose in reopening the case 'new and further' disability would clearly exist .... The Board, however, has instead relied specifically upon Dr. Patzakis and not Dr. Rose. Dr. Patzakis opines the head and shoulder problem are unrelated to the industrial injury. Dr. Patzakis found no objective evidence of neck disability; he does not discuss whether the neck discomfort is related to the industrial injury.... [¶] The problem with Macias' testimony of increased subjective complaints is that the only increase under Dr. Patzakis' opinion that is related to the industrial injury is for the back. Conditions unrelated to the industrial injury are not 'new and further disability.' As to the subjective complaints related to the injury, Dr. Patzakis neither found objective evidence supporting such increased subjective complaints nor found them significantly changed." (109 Cal. App.3d at p. 958.)

In the case at bench, Dr. Hayes' 1980 report is more like the report of Dr. Rose than the report of Dr. Patzakis in the *Macias* case. Here, albeit far from overwhelming, the testimony of the applicant and the report of Dr. Hayes constituted substantial evidence both of an increase in subjective complaints and additional objective factors of impairment.

*Disposition*

The Board's order is affirmed.

Morris, J., and Tamura, J.,* concurred.

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.